***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has shown good grounds to reconsider the evidence and reverse the opinion and award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a pre trial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An employee-employer relationship existed at the time of the alleged incident.
2. Unigard Insurance Company was the carrier on the risk at the time of the alleged incident.
3. The date of plaintiff's injury was February 21, 1996.
4. The parties were subject to the North Carolina Workers' Compensation Act at the time of the incident, the employer employing the requisite number of employees to be bound under the provisions of said Act.
5. At the time of his injury, plaintiff's average weekly wage was $508.83, yielding a compensation rate of $339.22.
6. Defendants paid temporary total disability payments to plaintiff from March 4, 1996 through January 7, 2001 totaling $85,822.66.
7. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of documents including Industrial Commission forms, motions, selected medical records and correspondence.
8. The parties stipulated that all Industrial Commission forms on file with the Commission are genuine and authentic and may be admitted into evidence.
 ***********
Based upon the evidence of record, the Full Commission adopts in part and modifies in part the findings of fact found by the deputy commissioner as follows:
 FINDINGS OF FACT
1. On February 21, 1996, plaintiff sustained an admittedly compensable back injury. Plaintiff has undergone extensive medical treatment including, in October 1996, an L4-L5 decompression performed by his authorized treating physician, Dr. Thomas Melin. As of December 11, 1996, Dr. Melin was of the opinion that plaintiff was at maximum medical improvement and retained a 25% permanent partial disability to the back. At that point, Dr. Melin considered a fourth surgical procedure which plaintiff was reluctant to undergo, and Dr. Melin recommended ongoing pain management through medication.
2. In April 1997, plaintiff began to consider surgery and requested a second opinion from Dr. Craig Derian. Defendants denied plaintiff's request, and plaintiff consulted Dr. Derian in May 1997 using his private health insurance. Dr. Derian was of the opinion that surgery was an option, and that prior to surgery plaintiff would need further diagnostic testing including a discogram.
3. Before undertaking additional surgery, plaintiff decided to pursue pain management as prescribed by his authorized treating physician, Dr. Melin. Dr. Melin's treatment was authorized in July 1997, however, Dr. Melin would not manage plaintiff for pain and referred him to a pain management facility. Defendants refused to authorize this referral.
4. Plaintiff obtained an Order from the Industrial Commission on March 17, 1998 granting his motion for authorization of pain management treatment. Defendants chose to appeal this Order rather than comply. As a result of mediation, in June 1998, defendants' designated Dr. Mark Rodger as plaintiff's authorized treating physician.
5. After coming under Dr. Rodger's treatment, plaintiff underwent a painful discogram. Following the discogram, Dr. Rodger was of the opinion that plaintiff had permanent nerve damage to his right L5 nerve root which would not improve with surgery and would best be treated by a spinal cord stimulator, and that plaintiff suffered from degenerative disc disease at L4-L5 and L5-S1 that might be amenable to interbody fusion cages. Dr. Rodger recommended that plaintiff be treated at the pain clinic for a spinal cord stimulator and avoid surgery unless the pain worsened.
6. Following Dr. Rodger's recommendation, defendants approved the spinal cord stimulator and pain management treatment. This was approximately twelve months after it had originally been recommended by Dr. Melin.
7. Defendants requested an independent medical examination with Dr. Lestini scheduled for March 2, 2000.
8. Plaintiff refused to attend this independent medical examination and was specifically concerned that he had just undergone a very painful discogram by his authorized treating physician. Furthermore, plaintiff was mindful that as defendants had been selecting and directing his treatment all along, another independent medical examination by yet another doctor that defendants chose was burdensome. Plaintiff was particularly concerned in that defendants' refusals and delays of almost a year to authorize pain management had caused him to be without medication for a prolonged period of time.
9. On March 24, 2000, during a hearing by telephone, plaintiff informed the Special Deputy Commissioner that he would attend any examination as ordered by the Special Deputy even though he was concerned that such a second independent medical examination was not statutorily authorized under N.C.G.S. § 97-27(a).
10. Defendants did not obtain a rescheduled appointment for plaintiff with Dr. Lestini until June 29, 2000. Thereafter, plaintiff underwent, on three separate occasions, the independent medical examination which included two office visits and a myelogram of the lumbosacral spine.
11. As a result of his examination, Dr. Lestini did not alter plaintiff's treatment regimen and did not recommend further surgery.
12. Plaintiff was never ordered by the Industrial Commission to submit to the March 2, 2000 examination by Dr. Lestini. Instead, on March 24, 2000, prior to any Order of the Commission, plaintiff agreed to submit to said examination.
13. Plaintiff's refusal to submit to the examination by Dr. Lestini on March 2, 2000 as requested by defendants was not justified. Plaintiff's refusal lasted from March 2, 2000 through March 24, 2000. At no time during that period was plaintiff in violation of an Order of the Industrial Commission requiring him to submit to the same.
14. Plaintiff has not indicated dissatisfaction with the examination provided by or the testing ordered by Dr. Lestini as a result of his independent medical examination.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's unjustified refusal to submit to an independent medical examination as requested by defendants was in effect from March 2, 2000 through March 24, 2000. N.C.G.S. § 97-27(a).
2. Defendants are entitled to suspend plaintiff's benefits for the period from March 2, 2000 through March 24, 2000 as plaintiff unjustifiably refused to submit to the independent medical examination requested by defendants. N.C.G.S. § 97-27(a).
 ***********
Based on the foregoing finds of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Defendants are entitled to a credit for benefits paid to plaintiff during the period of suspension for his unjustified refusal to submit to medical treatment as requested by defendants from March 2, 2000 until March 24, 2000.
2. Plaintiff's request for another examination pursuant to N.C.G.S. § 97-27(b) is hereby DENIED.
3. Defendants shall pay the costs due the Commission.
This the ___ day of January 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER